## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JULY 1999 SESSION



**FILED**

November 4, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** ) | **NO. 03C01-9806-CC-00215** |
| ) | |
| Appellee, ) | **ANDERSON COUNTY** |
| ) | |
| **VS.** ) | **HON. JAMES B. SCOTT,** |
| ) | **JUDGE** |
| **CURTIS J. ELY,** ) | |
| ) | |
| Appellant. ) | (Felony Murder - Life Sentence) |

**FOR THE APPELLANT:**

**J. THOMAS MARSHALL, JR.**
District Public Defender
101 South Main Street, Ste. 450
Clinton, TN 37716

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**MARVIN S. BLAIR, JR.**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**JAMES N. RAMSEY**
District Attorney General

**JANICE G. HICKS**
Assistant District Attorney General
127 Anderson County Courthouse
Clinton, TN 37716

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY, JUDGE**

# O P I N I O N

Defendant, Curtis J. Ely, was convicted by an Anderson County jury of first degree murder in perpetration of robbery and received a life sentence. In this appeal as of right, defendant presents the following issues for our review:

1.      whether the evidence was sufficient to support the verdict;

2.      whether evidence in violation of the rules of discovery was improperly admitted;

3.      whether defendant's pre-trial statements were improperly admitted;

4.      whether the state was improperly allowed to reopen its proof;

5.      whether the trial court improperly commented upon the evidence;

6.      whether gang affiliation testimony was improperly admitted;

7.      whether the state's dismissal of the premeditated first degree murder count at the conclusion of its proof was improper;

8.      whether the trial court's failure to charge lesser offenses was error;

9.      whether the trial court's failure to instruct the jury that accomplices cannot corroborate each other was error; and

10.     whether defendant was denied a fair trial due to cumulative errors.

Our review of the record reveals no reversible error; therefore, we **AFFIRM** the judgment of the trial court.

## FACTS

The seventy-year-old victim, William C. Bond, was robbed and brutally murdered in his home during the early morning hours of December 3, 1996. The cause of death was numerous blows to the head with a brick. The brick was found near the victim's body inside the residence. Among the items stolen from the residence were a television, VCR and CD player.

Trinidy Carden, the former step-grandson of the victim, was linked to the crime when he tried to sell some of the stolen property several days later. He eventually pled guilty to second degree murder pursuant to a plea agreement and

2

received a sentence of 20 years.

Upon his arrest, Carden advised the authorities that the defendant participated in the crime and was the person who actually murdered the victim. Defendant was then arrested.

Upon being questioned by the authorities at the Clinton Police Department, defendant acknowledged that he spent the night with Carden; however, he did not confess his involvement in the crime. After formal interrogation, he was transported to the county jail. While en route, defendant asked the officers to stop the vehicle since he wanted to talk. The defendant then told the officers that "[m]e and Trinidy went up to the Bond house that night. We knocked on the door. No one was home. Take me to jail."

The state called Carden as its witness. To the surprise of the state, Carden denied that defendant was implicated in the crime. He testified that his prior statements to the authorities implicating defendant were untrue.

Martha Wine testified that the defendant, Carden and a third person named "Wes" came to her residence in Knoxville at approximately 5:00 a.m. on the morning of the homicide. They had a TV, VCR and CD player. Carden told Wine that he and the defendant had beaten the victim with a brick.

Wes Powers testified that around 3:00 a.m. on the night of the homicide, the defendant called him and asked Powers to carry Carden and him to Knoxville. Powers testified that defendant stated they had broken into a house and "knocked somebody unconscious." Powers declined to carry them to Knoxville at that time; however, he did take them to Wine's residence the next evening where he saw the TV and VCR. The defendant told Powers that he hit the victim with a brick.

Jason Johnson, Carden's cousin, testified that the defendant told him he hit the victim with a brick. Johnson denied any involvement in the crime.

The defense presented witnesses who testified that Carden admitted that he was the person who hit the victim with the brick. Two of the witnesses implicated

Jason Johnson as Carden's accomplice.

The defendant did not testify at trial.

At the conclusion of the proof, the state secured permission of the trial court to reopen its proof and allow Carden to testify again. When the state asked him whether he told the truth in the previous day's testimony, Carden stated he was under too much pressure and declined to answer the question. Upon continued questioning, he stated that he had told the truth in his testimony the previous day.

Based upon this proof, the jury convicted the defendant of murder in perpetration of robbery.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support felony murder on two primary grounds: (1) the jury was allowed to consider Carden's prior inconsistent statements as substantive evidence; and (2) the statements of defendant's alleged accomplices were not sufficiently corroborated. We reject defendant's argument.

### A. Carden's Prior Inconsistent Statements

When Carden was called as a state witness, he testified that the defendant was not involved in the offense. This testimony was contrary to his pre-trial statements to the authorities. Surprised by this testimony, the prosecutor endeavored to impeach Carden by making detailed references to his prior inconsistent statements. In those prior statements, Carden implicated the defendant as his accomplice, and as the person who actually committed the murder. Defendant contends the jury was not adequately instructed that these statements could be considered only for impeachment purposes and not as substantive evidence.

Prior inconsistent statements are admissible to impeach a witness but are not admissible as substantive evidence. King v. State, 215 S.W.2d 813, 815 (Tenn. 1948). The credibility of a witness may be attacked even by the party calling the witness. Tenn. R. Evid. 607. However, such impeachment testimony can be highly

4

prejudicial and improper. *See* State v. Roy L. Payne, C. C. A. No. 03C01-9202-CR-45, Washington County (Tenn. Crim. App. filed February 2, 1993, at Knoxville). Certainly, the prosecutor should not call a witness for the sole purpose of introducing prior inconsistent statements under the guise of impeachment. *See* N. Cohen *et al.*, **Tennessee Law of Evidence** § 613.1 (3d ed. 1995). The failure to instruct the jury that prior inconsistent statements may be considered only for the purpose of impeachment, and not as substantive evidence, is error. State v. West, 767 S.W.2d 387, 396 (Tenn. 1989); State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982).

At a bench conference during Carden's testimony, defense counsel requested that the trial judge advise the jury that prior inconsistent statements could not be considered as substantive evidence. The trial court then advised the jury that it could consider prior statements for the purpose of weighing the witness's testimony in court. The trial court further advised the jury that prior statements are "for the purpose of testing his credibility here, that he's ask (sic) about - and if there is an explanation, it's up to you to weigh that explanation." No further objection or request was made by defense counsel. We conclude the jury was sufficiently advised as to how it should view prior inconsistent statements.

Defendant further contends the trial court compounded this error by not incorporating T.P.I. - CRIM. 42.06 (4th ed. 1995) into the final jury charge. We note there was no objection to the jury charge, nor was the failure to give this charge included in the motion for new trial. The issue is waived. *See* Tenn. R. App. P. 3(e). Although this Court has a right to consider whether this omission was "plain error," *see* Tenn. R. Crim. P. 52(b), we find no plain error in light of the contemporaneous instructions given the jury.

**B. Corroboration of Accomplice Testimony**

The testimony of Martha Wine, Wes Powers, and Jason Johnson implicated the defendant in the commission of this crime. Defendant contends these witnesses were accomplices as a matter of law, and their testimony was not sufficiently corroborated. The testimony of these witnesses does not indicate that they, in fact, were accomplices. An accomplice is one who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission

5

of the crime alleged in the charging instrument." State v. Griffis, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997). An accessory after the fact is not an accomplice to the murder. See Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964); State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997).

In this case the trial court charged the jury that it was for their determination as to whether or not these witnesses were accomplices. Under the proof, this was the proper charge. Assuming the jury found they were not accomplices, which was the jury's prerogative, their testimony need not be corroborated.

### C. General Sufficiency of the Evidence

When reviewing the trial court's judgment, this Court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Tenn. R. App. P. 13(e); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In other words, this Court will not reevaluate or reweigh the evidence brought out at trial. It is presumed that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. Grace, 493 S.W.2d at 476.

Viewing the evidence in a light most favorable to the state, as we must, the evidence is more than sufficient to sustain the verdict. The victim was unquestionably beaten to death with a brick and robbed, thereby establishing the offense of felony murder. The only issue was identity. The defendant's admission places him at the scene of the crime. Other witnesses place the defendant in possession of the stolen property shortly after the homicide. Two witnesses stated that the defendant confessed to beating the victim. It was for the jury to determine the credibility of the witnesses. The evidence is sufficient to sustain the verdict.

6

This issue is without merit.

## II. ALLEGED DISCOVERY VIOLATION

Defendant contends the trial court erred in allowing two officers to testify that the defendant told them "[m]e and Trinidy went up to the Bond house that night. We knocked on the door. No one was home. Take me to jail." The full context of this statement was never reduced to writing and was not furnished to defense counsel prior to trial. However, the police report furnished defense counsel related that "defendant did verbally state to [the officers] that he did go to the residence with Trinidy Carden... on the day of the homicide."

At trial the prosecutor explained that she was unaware of the full substance of the defendant's statement until a week prior to trial, at which time she advised defense counsel. Defense counsel insisted he was unaware of this statement. The trial court concluded defense counsel had the "substance" of the oral statement since the police report included defendant's admission that he was at the residence "on the day of the homicide." Defense counsel contends the testimony of the officers indicates that defendant was there on the "night" of the murder and not during the "day;" thus, their testimony was more incriminatory.

We sympathize with defense counsel since he apparently felt the full statement was more incriminating than the summary he had been given. Nevertheless, we are constrained to agree with the trial court that the "substance" of defendant's admission was furnished. *See* Tenn. R. Crim. P. 16(a)(1)(A). Furthermore, even if the state did violate the discovery rule, the defendant has the burden of showing actual prejudice in order to exclude the evidence. State v. Caughron, 855 S.W.2d 526, 535 (Tenn. 1993); State v. Brown, 836 S.W.2d 530, 548 (Tenn. 1992). Defendant has not met this burden.

This issue is without merit.

## III. DEFENDANT'S PRE-TRIAL STATEMENT

7

Defendant also attacks the admissibility of his pre-trial statement on another ground. He contends that he had earlier invoked his right to silence, thereby foreclosing any further interrogation. We conclude defendant is entitled to no relief.[1]

After his arrest, defendant was advised of his Miranda rights at the Clinton Police Department. He signed a waiver of rights and, after two hours of questioning, stated "I don't have anything else to say." The officers then ceased the interrogation, and defendant was transported to the county jail. While en route, defendant asked the officers to "pull over, that he wanted to talk." The officers did so and, according to the testimony of one of the officers, defendant was re-advised of his Miranda rights. Defendant subsequently made the incriminating statement.

If an individual indicates in any manner during questioning that he wishes to remain silent, the interrogation must cease. State v. Crump, 834 S.W.2d 265, 269 (Tenn. 1992). However, interrogation may resume provided the defendant's right to cut off questioning is "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975); Crump, 834 S.W.2d at 269.

In this instance we find no violation of defendant's right against self-incrimination. The interrogation at the police department ceased upon defendant's statement that he had nothing further to say. During his transport to the county jail, the defendant himself initiated the conversation with the officers. See Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378, 386 (1981)(holding the defendant's initiation of conversation with authorities after a previous invocation of the right to counsel allows the authorities to resume interrogation). Under these circumstances, we find no constitutional violation.

This issue is without merit.

## IV. REOPENING OF PROOF BY STATE

Defendant contends the trial court erred in allowing the state to reopen its

---

[1]Ordinarily, a motion to suppress a pre-trial statement should be filed pre-trial. *See* Tenn. R. Crim. P. 12(b)(3). In this case, the trial court conducted a jury-out hearing during trial to determine the admissibility of this evidence, apparently due to defense counsel's contention that he was not aware of the full content of defendant's pre-trial statement.

proof by recalling Carden as a witness.  We disagree.

Whether to allow the reopening of proof is within the discretion of the trial court whose decision will not be overturned unless there is a showing that an injustice has been done.  State v. Brock, 940 S.W.2d 577, 580 (Tenn. Crim. App. 1996).  There has been no showing of an abuse of discretion in this instance.

Furthermore, defendant has made no showing of prejudice.  *See* Tenn. R. App. P. 36(b).  Upon being recalled as a witness, Carden again declined to implicate the defendant in the crime.

This issue is without merit.

## V.  ALLEGED COMMENT ON THE EVIDENCE

Prior to recalling Carden as a witness, the state was under the impression that Carden would recant his prior testimony and implicate the defendant as he had in his pre-trial statements.  The trial court told the jury:

> [T]he State, back in chambers, along with [defense counsel], had informed me that there was testimony that they felt material to the investigation in this matter, had changed; and they wanted me to reopen the proof... to see if they couldn't get that testimony before the Court and (sic) what they consider to be a forthright manner, honest way.

The state then recalled Carden as a witness expecting him to recant his prior testimony.  The state asked Carden if his previous testimony about how the victim died was truthful.  Camden responded that he could not answer the question due to "significant amounts of pressure here coming from all different sources.  One keep wanting me to do this; one wanting me to do the other."  At that point the trial judge *sua sponte* advised the witness, "I want you to tell the truth.  Can you do that?"  Carden then stated that his prior testimony was correct.

Defendant contends these statements to, and in the presence of, the jury were impermissible comments on the evidence indicating the trial judge's opinion as to the credibility of the witness.  We note there was no contemporaneous objection to these statements.  Accordingly, the issue is waived. *See* Tenn. R. App.

9

P. 36(a); State v. Robinson, 971 S.W.2d 30, 42-43 (Tenn. Crim. App. 1997). Regardless, we find no error.

Article 6, § 9 of the Tennessee Constitution prohibits judges from commenting on the evidence. The trial judge must be careful not to give the jury any impression as to the trial judge's feelings, or make any statement reflecting upon the weight or credibility of evidence which might sway the jury. State v. Suttles, 767 S.W.2d 403, 406-07 (Tenn. 1989).

In the case at bar the trial judge simply advised the jury as to why he was allowing the state to reopen its proof. When the witness declined to respond to the prosecutor's question, the trial judge simply advised the witness to tell the truth. The witness continued to adhere to his prior testimony. We do not view the actions of the trial judge as evidencing any bias or indication of opinion as to the credibility of the witness.

This issue is without merit.

## VI.  TESTIMONY RELATING TO GANG AFFILIATION

Prior to trial, the state indicated it had no intent of introducing evidence relating to defendant's gang affiliation. When Carden, for the first time in his trial testimony, indicated that defendant was not implicated in the crime, the state secured permission of the trial court to ask Carden about his and defendant's gang affiliation. Defendant contends such evidence was highly prejudicial and improperly admitted. We disagree.

Once Carden testified that the defendant was not implicated in the crime, the state had every right to impeach him. See Tenn. R. Evid. 607. The state asked Carden about numerous letters he had received from the defendant in which defendant reminded Carden of their affiliation with A-Town Mafia Gangsta. Carden acknowledged the following in his testimony:

> When you join a (sic) organization, you have a
> responsibility, sort of like an oath, you know. It's like

10

> your second; but it's your family, more or less, your
> second family... You treat them just as you would your
> own family. You don't traitor them; you don't traitor
> them; and you don't expect them to do the same to you.
> It's just unheard of.

Defendant's contention that this evidence was introduced under Tenn. R. Evid. 608(b) as evidence of prior bad acts is misguided. The evidence was introduced to reveal the motive for Carden testifying in the manner he did. Thus, the evidence was relevant to bias or prejudice of the witness. *See* Tenn. R. Evid. 616. The trial court correctly ruled that the evidence was admissible, and that probative value outweighed any unfair prejudice. *See* Tenn. R. Evid. 403.

This issue is without merit.

## VII. DISMISSAL OF PREMEDITATED FIRST DEGREE MURDER COUNT

The defendant was indicted for both premeditated first degree murder and felony murder. At the conclusion of the state's proof, the prosecutor requested a "*nolle prosequi*" of the premeditated first degree murder count. Defendant argued the dismissal was requested in bad faith so as to eliminate second degree murder as a lesser offense. The trial court allowed the *nolle prosequi.*

A *nolle prosequi* is a formal entry upon the record by the prosecuting officer in which the officer declares that there will be no further prosecution of the case. State ex rel. Underwood v. Brown, 244 S.W.2d 168, 171 (Tenn. 1951). Although the prosecution terminates, it is ordinarily not a bar to a subsequent prosecution. Scheibler v. Steinburg, 167 S.W. 866 (Tenn. 1914); 22A C.J.S. **Criminal Law** § 419, p. 2 (1989). However, a dismissal without the consent of the defendant after the jury has been impaneled and sworn would prohibit further prosecution on the dismissed charge. *See* Tenn. R. Crim. P. 48(a).

Regardless of whether the dismissal was truly a *nolle prosequi* in the instant case, it is the state's prerogative to dismiss a count of the indictment and proceed under another count. *See* State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981).

This issue is without merit.

## VIII. <u>FAILURE TO INSTRUCT ON LESSER OFFENSES</u>

Defendant contends the trial court erred in failing to instruct the jury as to the lesser offenses of second degree murder, reckless homicide, criminally negligent homicide, facilitation of felony murder and accessory after the fact. We find no reversible error.

Accessory after the fact is neither a lesser grade nor lesser included offense of felony murder. <u>State v. Hodgkinson</u>, 778 S.W.2d 54, 63 (Tenn. Crim. App. 1989); *see generally* <u>State v. Trusty</u>, 919 S.W.2d 305, 310-11 (Tenn. 1996). Assuming the other listed offenses are either lesser included or lesser grade offenses of felony murder, we find no error in the trial court's failure to instruct on them. Failure to instruct on a lesser offense is not error where the record clearly shows that the defendant was guilty of the greater offense, and the record is devoid of any evidence permitting an inference of guilt of the lesser offenses. <u>State v. Langford</u>, 994 S.W.2d 126, 126-28 (Tenn. 1999); <u>State v. Stephenson</u>, 878 S.W.2d 530, 550 (Tenn. 1994).

The Tennessee Supreme Court's holding in <u>State v. Vann</u>, 976 S.W.2d 93, 100-01 (Tenn. 1998), is instructive. Just as in the instant case, the state dismissed a premeditated murder count and proceeded on the felony murder count. The trial court only instructed as to felony murder, and defendant argued the instructions should have included second degree murder and facilitation of a felony. Defendant argued the jury could have concluded that someone other than the defendant actually committed the murder, while the defendant furnished substantial assistance. The Court concluded that the evidence in the record established that the victim was killed during the perpetration of the felony, died from an accidental choking, or committed suicide. *Id.* The court concluded that the record was devoid of evidence to support a charge on lesser offenses. *Id.* at 101.

We reach the same conclusion in the case at bar. The victim was undisputedly robbed and brutally murdered by being struck at least eight times in the head with a brick. The record is devoid of evidence permitting an inference of

guilt on any lesser offense.

This issue is without merit.

## IX. ACCOMPLICE JURY CHARGE

Defendant contends that witnesses Martha Wine, Wes Powers and Jason Johnson were accomplices as a matter of law; their testimony could not be used to corroborate each other; and the trial court erred in not so instructing the jury. Again, we disagree.

All three witnesses denied any criminal involvement. There is no indication that any of these witnesses were indicted for this crime. Where a witness denies involvement in the crime, the question of whether he or she is an accomplice, whose testimony must be corroborated, is one of fact to be submitted to the jury with proper instructions from the court on how to consider such testimony. State v. Anderson, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997). The trial court instructed the jury that if they found any of these witnesses to be an accomplice, then the defendant could not be convicted upon the uncorroborated testimony of that witness. This instruction was correct.

This issue is without merit.

## X. CUMULATIVE ERROR

Finally, defendant contends he was deprived of a fair trial due to cumulative errors. Having examined all issues raised by defendant and having found no reversible error, we likewise find this claim to be without merit.

## CONCLUSION

After a careful consideration of the evidence, we conclude the judgment of

13

the trial court should be **AFFIRMED**.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

**(See Dissenting Opinion)**
**GARY R. WADE, PRESIDING JUDGE**

**(See Concurring Opinion)**
**DAVID H. WELLES, JUDGE**